UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA      )
                              )
      v.                      )     CRIMINAL NO. 05-10205-NG
                              )
JAVON WOOTEN                  )
```

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Javon Wooten, submits this memorandum to assist the Court in sentencing.  For the reasons that follow, defendant submits that he is not subject to the Armed Career Criminal Act.  Defendant concedes that the career offender provision of the sentencing guidelines nominally applies, but submits that a sentence of imprisonment substantially lower than that suggested by the career offender range, is consistent with the factors set forth in 18 U.S.C. § 3553(a) and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing.

**ARGUMENT**

**A. The Disposition of Wooten's 2001 Arrest for Resisting Arrest Is Not Countable as a Predicate Conviction for Purposes of the Armed Career Criminal Act.**

The Presentence Report cites three state court dispositions as predicate convictions that, in the Probation Department's view, subject Wooten to the Armed Career Criminal Act (ACCA) and its statutory provision for a mandatory minimum sentence of fifteen years.  PSR ¶ 50; see 18 U.S.C. 924(e)(mandatory minimum

applies to any person convicted of three or more violent felonies or serious drug offenses).  One of the three dispositions, outlined in ¶ 61 of the PSR, arises from an incident where defendant was convicted of simple possession of cocaine but also admitted to sufficient facts to a charge of resisting arrest.  For the reasons that follow, the state court district court guilty filed disposition of the resisting arrest allegation outlined in ¶61 of the report is not countable as a predicate under the Armed Career Criminal Act.

   1.   **Background**

   In November, 2001 Brockton Police issued a straight warrant for Wooten's arrest in the wake of an altercation with his girlfriend, Carlotta Fernandes.[1]  Police received information as to Wooten's whereabouts and proceeded to arrest him on the warrant.  In so doing, police alleged that Wooten "lowered his head and attempted to 'run through' the officer."  PSR ¶ 61.  Found on his person upon arrest were two rocks of crack cocaine.  Id.

   Defendant was brought before the Brockton District Court the same day detained on two previously-issued straight warrants and a pending probation surrender warrant, as well as new charges of simple possession of cocaine and resisting arrest.  Six days

---

[1] As the PSR makes clear, Ms. Fernandes and defendant have long-since reconciled and Ms. Fernandes is now fully supportive of Wooten.

later, Wooten pled guilty or admitted sufficient facts to all of the various charges and probation violations. The Brockton District Court imposed concurrent sentences, the longest of which was two years in the house of correction. The aggregate sentence disposed of nearly all of the pending offenses. The Brockton District Court however, made one notable exception to sentencing Wooten on the pending charges: instead of sentencing Wooten on the Resisting Arrest charge, it ordered that the case be filed after the finding of guilt.

### 2. A Guilty Filed Disposition Is Not Countable

The Presentence Report's conclusion the guilty filed Resisting Arrest charge counts as a predicate offense for purposes of the ACCA results in an increase of the mandatory minimum sentence otherwise required of five years to the statutorily required 180 months. Defendant submits, however, that the circumstances of the offense and the disposition render the disposition uncountable for purposes of the ACCA.

Guilty filed dispositions occupy a unique position in the continuum of possible dispositions in state court. An idiosyncracy of the disposition is that it possesses no or little finality: because no sentence is imposed and the case is unappealable through the Massachusetts appellate system. See Griffiths v. INS, 243 F.3d 45 (1st Cir. 2001)(guilty filed disposition in Massachusetts is not a final judgment or

equivalent to sentencing; merely suspends, for as long as the case remains on file, defendant's right to appeal alleged error in the proceeding). This facet of the disposition is notable enough that Judge Young has ruled against counting the disposition as a predicate.  See United States v. Tavares, 93 F.3d 10, 13 & n.3 (1st Cir. 1997)(noting the trial judge's departure methodology).

A guilty filed disposition is particularly suspect where, as here, it was imposed at the same time as many other charges, all of which (except the Resisting Arrest charge) the sentencing court saw fit to impose an actual sentence.  Such a disposition reflects the unstable nature of the allegation, and likely reflects the state district court's reticence to create an appealable disposition that would unnecessarily complicate the proceedings.  In these circumstances, such a guilty filed disposition in the bench session of the district court does not possess sufficient finality under Massachusetts law so that it may be classified as a predicate conviction for purposes of the Armed Career Criminal Act.[2]  See 18 U.S.C. § 921 (a)(20)("What

---

[2]Although defendant does not urge it as a ground for declining to count the disposition, defendant notes that in the majority of jurisdictions nationwide a charge of resisting arrest would not qualify as an ACCA predicate because the maximum penalty renders it a misdemeanor for federal as well as state purposes.  It is a peculiarity of the Massachusetts system nearly all misdemeanors carry a two or two and one-half year maximum penalty, making them felonies for federal purposes, that renders a crime such as resisting arrest a predicate for the ACCA.  A

constitutes a conviction . . . shall be determined in accordance with the law of the jurisdiction in which the proceedings were held."). Defendant therefore objects to counting the guilty filed disposition of the Brockton District Court Resisting Arrest charge as predicate offense for purposes of the Armed Career Criminal Act.

**B.    A Sentence of Nine Years Imprisonment Is, in Wooten's case, Sufficient But Not Greater than Necessary to Effectuate the Purposes of Sentencing.**

Defendant does not dispute the Probation Department's calculation that he is a career offender for purposes of the sentencing guidelines. See PSR ¶ 144. Under United States v. Booker, 125 U.S. 738, 757 (2005), however, sentencing courts are to treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a) keeping in mind the primary directive that sentencing courts "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Id.  Here, those factors dictate a sentence sharply lower than the 188-235 months suggested by the sentencing guidelines.

**1.    The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

   **(a) Nature and Circumstances of Offense**

---

chart setting forth the maxima in various jurisdictions is attached hereto as Exhibit A.

Wooten has consistently and repeatedly recognized that his behavior in falling into a street life that included the dangerous world of drug distribution was "stupid" and "a terrible waste of [his] life." Notwithstanding the seriousness of his behavior, it should be noted that the offense at issue here reflects quintessentially low-level drug distribution - purchases made by a confidential informant during the investigation of Wooten appear to be of no more than one-half of gram at any one time. PSR ¶ 16-17. The unsophisticated nature of Wooten's drug distribution efforts is demonstrated by his personal involvement in delivering controlled substances to people on the street or inviting them into his home - hallmarks of a small-time dealer. See PSR ¶ 18-19. Extensive searches of both of the addresses associated with Wooten and his automobile turned up only a scanty total of only ten grams of crack cocaine, as well as weapons. PSR ¶ 21-22.

The circumstances of the offense, although serious, should be put in context with the milieu in which Wooten was raised and his subsequent efforts to put the street life behind him.

**(b) Wooten's History and Circumstances**

Wooten is a 29 year-old African-American man who suffered from a broken family's decision to move to Brockton and a difficult inner-city life when he was quite young. His formative years were spent without any significant male role model and,

indeed, was himself expected to be the role model for his biological sister and adopted siblings. Consideration of Wooten's formative years, in conjunction with his recent demonstrated efforts to turn his life around by extracting himself from the street life in which he was raised, militates that a sentence far lower than 188 months is reasonable and appropriate.[3]

As the PSR notes, Wooten's teenaged years were extremely chaotic. Without a father to provide any significant emotional support or nurturing during his upbringing, Wooten bounced around between his mother, extended family, and the streets throughout his childhood. Wooten had little supervision or exposure to discipline.

Not surprisingly, this lack of emotional (or any other) male support during his formative years led to encounters with the Departments of Social Services and Youth Services. As a result, Wooten quickly found himself in the merry-go-round of life on the

---

[3] In 1992, the sentencing commission, without explanatory comment, determined that "lack of guidance as a youth" was not a relevant consideration for departure. U.S.S.G. § 5H1.12; U.S.S.G. Appx. C, vol. I, amendment 466 (noting only that "This amendment provides that the facts specified [in § 5H1.12] are not appropriate grounds for departure"). As a result, this Court can, and indeed must, consider factors that have long been considered relevant to sentencing notwithstanding the Sentencing Commission's identification of the factor as irrelevant. See United States v. Jones, 445 F.3d 1 (1st Cir. 2006)(no legal error in considering factors discouraged or forbidden under guidelines).

streets, DSS placements, and DYS commitments.  Indeed, what little support existed was negative; part of his adolescence was spent petty crime with cronies on the street.  This lack of support during these critical years resulted in survival behaviors - including weapons possession - that were wrong but normalized by his peers.  Without guidance from a responsible male, Wooten was left unprepared to fight the prevailing wisdom of the streets that mandated involvement with undesirables and associated behaviors.  Despite his family's best intentions and actions, life on the streets proved to be too tempting an allure for Wooten and he began a slide into what, when a young teenager, appeared to be an exciting life of easy money.

   Despite the lack of tools to disassociate himself from this urban lifestyle, Wooten had, by the time of his arrest on the instant matter, consciously begun pulling away from street life.  As the PSR demonstrates, Wooten has gained remarkable insight into his past difficulties and has shown both a dedication and ability to confront the issues that result in his unacceptable behavior.  As his mother attests, Wooten is a "good backbone for the family" who is close to his biological and adopted siblings.  His wife, Carlotta Fernandes, notes that Wooten is a "loyal person" who, in recent times, has been trying to do the right thing by staying away from street life.

The birth of his children, and his commitment through marriage to Carlotta Fernandes, has had a significant impact on his behavior and his long-term view of his life. <u>See</u> PSR ¶¶ 107-110. Wooten's dedication to avoiding the fate of early mortality or lifetime of prison is demonstrated by his decision to marry, take on the responsibility of helping raise Fernandes' family (as well as his own children), and the couple's planned move to North Carolina in order to escape the milieu that formerly enveloped Wooten. These positive steps all strongly indicate Wooten - who even in the best of circumstances will not exit prison until his mid 30's - is not at risk to recidivate.

The proof that Wooten has taken positive, concrete steps to rehabilitation is palpable: Wooten was released on bond after his arrest in this matter by state authorities. Notwithstanding his knowledge that the case would likely be pursued federally, Wooten remained in Brockton trouble-free until his federal arrest nearly two months later. Once indicted federally, Wooten chose to forgo pretrial litigation and plead guilty in a timely manner.

Given these positive prognostic signs and the nature of the offense at issue, a sentence much lower than the advisory guideline range will be sufficient but not greater than necessary to effectuate the sentencing goals of 18 U.S.C. § 3553(a).

2. **The Need for the Sentence Imposed to Promote Certain Statutory Objectives:**

> **(A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

The offense conduct here is serious and merits significant punishment. The seriousness of the offense is reflected by the mandatory minimum sentence of five years below which this Court may not go. Nevertheless, the offense at issue here is a quintessential example of limited street-level drug distribution. The Court should consider whether an intermediate sentence substantially below the guideline range will be significant enough punishment which will far better reflects the seriousness of defendant's conduct than does the 188-235 month career offender range. <u>United States v. Caraballo</u>, 447 F.3d 26, 27 (1st Cir. 2006)(Per Curiam)(relatively routine, street-level nature of the offenses of conviction in part justified variance from career offender guideline sentencing range to nine year sentence). This is particularly true given the nature and circumstances of crack distribution - had Wooten sold powder cocaine, the form of cocaine preferred outside of the inner city, Wooten would have been subject to a non-career offender guideline sentencing range of 57-63 months. Even as a career offender, Wooten's exposure would be limited to 151 months (rather than 188 months) were he have been in possession of powder cocaine. This disparity in treatment by the guidelines, in conjunction with indicators that Wooten is unlikely to recidivate when released, justifies a

moderate variance from the guideline sentencing range.  See United States v. Pho, 433 F.3d 53 (1st Cir. 2006)("in a drug-trafficking case, the nature of the contraband and/or the severity of a projected guideline sentence may not be taken into account on a case-by-case basis" when determining whether variance is warranted).

Similarly, it cannot be seriously argued that, given the conduct here in conjunction with Wooten's circumstances and subsequent positive steps, this Court cannot craft a sentence lower than 188 months but still sufficient enough to promote respect for the law, both specifically as to Wooten and generally as to the public at large.  Notwithstanding his facially serious record of convictions, Wooten has served time only three times (the first of which was a sentence of just 59 days), and each time at a county House of Correction facility.  Even a sentence at the statutorily mandated minimum of sixty (60) months will keep Wooten incarcerated for another three years in federal prison as a result of his irresponsible decision during the formative years to engage in criminal conduct.  The public's right to just punishment for the offense is vindicated by Wooten's conviction and punishment by the significant sentence created by the mandatory minimum floor.

**(B)   to afford adequate deterrence to criminal conduct**

Wooten's efforts to get out of the Brockton street life and maintain a sober, productive lifestyle have been wrecked by his decision to maintain his irresponsible and criminal behavior well into his 20's. Similarly, the lives of his close family have been thrown into turmoil. Even under the mandatorily-required sentence, Wooten will spend at least the next three years in prison, emerging when he is in his mid 30's. There can be little doubt that the sentencing and incarceration he will endure provide overwhelming deterrence to any thought of relapse in the future.

### (C) to protect the public from further crimes of the defendant

Admittedly, Wooten's record, at first blush, appears serious and similar enough to the conduct at issue to raise public protection concerns. A close reading of the Wooten's record, however, and its connection to the street life milieu in which Wooten lived, provides some mitigation as to the outwardly serious nature of his criminal record. Nearly all of the conduct underlying the past convictions, for instance, is connected to poor impulse control in the face of domestic stress - factors which will be ameliorated in the future as Wooten continues his quest for maturity and responsibility.

In any event, Wooten's commitment to move to a new social setting in North Carolina, away from the milieu that helped fuel his difficulties, in conjunction with his demonstrated

-12-

willingness and ability to confront the issues that have resulted in his repeated brushes with law enforcement, strongly suggest a complete cessation of his involvement in criminal activity.

> **(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Whatever sentence the Court imposes above the statutory minimum, the time remaining will be more than ample time for Wooten to take advantage of any programs available, including the anger management and parenting classes. Beyond that, further incarceration does nothing to address the issues identified the Presentence Report. Conversely, the four-year term of supervised release with tailored conditions can strike directly at the heart of the root causes of Wooten's difficulties. Consequently, a sentence with an intensive regimen of treatment components better serves the correctional goal while still providing substantial punishment.

**3.  The Sentencing Range Established by the Sentencing Commission**

The Presentence Report calculates Wooten's sentencing guideline range to be 188-235 months based on his status as a career offender. The career offender guideline was the sentencing commission and Congress's attempt to address what was perceived to be a small number of repeat violent offenders and serious drug offenders. The career offender guideline, however,

has worked to create an unwarranted disparity that works on defendants in Wooten's position unreasonably harshly.

The Sentencing Commission has identified the intersection of race, crack cocaine punishment, and recidivism as a troubling area where the career offender guideline works to create unwarranted disparity.  In its report, <u>Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform</u> (2004), the Sentencing Commission identified particular areas of concern within the sentencing guidelines scheme that appeared to exhibit unwarranted disparity.  The Commission attributed disparity to the effect of four factors: (1) the statutory mandatory minimum sentences and other Congressional action, (2) the 100-to-1 crack/powder quantity ratio, (3) the career offender provision, and (4) "differences in policies among U.S. Attorneys and in the practices of  individual prosecutors" and the inability of the Guidelines to ameliorate the effect of these policies and practices. <u>Id.</u> at 80, 131-34, 143-46.  In addition, the Commission identified findings on the career offender provision rebut the presumption that the repeat-offender provision is necessary to achieve another of the §3553(a) factors, that is, "to protect the public from further crimes of the defendant."  <u>Id.</u> at 131-133 (identifying the career offender provision as a sentencing rule that disproportionately impacts a

"particular offender group" but serves "no clear sentencing purpose"). The Commission also noted that in addition to the lack of empirical connection between the career offender sentences and recidivism, the career offender provision disparately impacts Black offenders, which constituted 26% of offenders sentenced under the guidelines in 2000, but were 58% of offenders sentenced under the career offender provision. Id. at 133. This was due mostly to the "inclusion of drug trafficking crimes in the criteria qualifying offenders for the guideline." Id. The Commission posited that this disparity might be created by the relative ease of detecting and prosecuting offenses in the impoverished minority urban milieu where "open-air" drug markets are more likely to exist. Id. at 133-34.[4]

Three of the four major disparity-inducing issues identified by the Commission intersect in Wooten's case to create an unreasonably high guideline sentencing range: he is subject to the mandatory minimum and increased maximum applicable to crack cocaine but not powder, his sentencing is influenced by the 100/1

---

[4] The commission considered the career offender disparity issue in the context of the impact where a defendant possessed prior drug trafficking offenses. Id. at 133. Admittedly, Wooten's qualifying predicate offenses fall under the "crime of violence" definition of the guideline rather than the serious drug offense prong. Defendant submits that the principle applies with equal force where, as here, the instant offense is a drug trafficking offense and the qualifying offenses are the mine-run offenses more likely to be reported and prosecuted in minority communities.

crack to cocaine quantity ration, and he is targeted by the career offender guideline.  The effect is stunning: were Wooten sentenced as non-career offender for cocaine powder and an enhancement for gun possession, he would be subject to a guideline sentencing range of just 57-63 months.  Were he sentenced for distribution of crack cocaine and possessing a gun without the career offender enhancement, he would be subject to a sentence of 110 months at the low end of the resulting sentencing range.  Were he simply a career offender but not subject to the increased maximum resulting from the crack/cocaine statutory ratio, he would be subject to an advisory sentence of 151 months at the low end of the range.  The intersection of these disparity-inducing factors in Wooten's case thus militates a sentence far lower than the 188 months suggested by the Presentence Report.

Moreover, implicit in the career offender guideline is that those with qualifying predicates are much more likely to recidivate when released from the sentence imposed.  Here, however, the force of that assumption is should be accorded little weight; the PSR identifies specific issues - Wooten's envelopment in the Brockton street life - that presage Wooten's recidivism and Wooten has dedicated himself to real and concrete steps to insure that those issues do not reoccur.

In short, the advisory guideline sentencing range is countervailed by the relatively low-level nature of the drug distribution activity at issue and the substantial indicia in Mr. Wooten's history and characteristics suggesting a vastly reduced risk of recidivism and risk to the public upon release. In light of the other statutory directives contained in 18 U.S.C. §3553(a), the Court should impose a sentence with limited regard to the career offender guideline sentencing range.

**4.   Provision of Rehabilitative Services and Sentences Available**

Given his demonstrated desire to change his life in spite of his difficult upbringing, Wooten would have seemed an ideal candidate for re-designation to the Shock Incarceration Program (a/k/a Intensive Confinement Center). See U.S.S.G. § 5F1.7; Bureau of Prisons Program Statement § 5390.08 (ICC provides highly-structured program for self-development for those who have not had stable employment/education/family history). This program was available to defendants who were within three years of release. Id. Successful completion of the program provides benefits such as lower security, longer community corrections placement, and early release. The Bureau of Prisons, however, terminated the program on January 14, 2005. Consequently, the Bureau of Prisons no longer has rehabilitative programs designed to address the issues raised by Wooten's0

chaotic childhood and efforts to disassociate from his former life on the streets.

Defendant submits that, pursuant to 18 U.S.C. § 3553(a)(2)(D), this Court can fashion a sentence that includes a component of intensive supervision to ensure Wooten is provided with rehabilitative services.  The Court should include as conditions, for example, that Wooten (1) disavow criminal associations, (2) avoid former associations and areas of the city of Brockton, (3) enroll in vocational training, and (4) contribute to his family's financial support.  In light of the absence of needed programs through the BoP to adequately address Wooten's social history, a sentence substantially less than the 188 months suggested by the Presentence Report balanced with a longer period of intensive supervision is appropriate.

## **CONCLUSION**

For the foregoing reasons, this Court should impose a sentence of imprisonment substantially lower than that suggested by the advisory guideline sentencing range with a four-year period of supervised release with the specific conditions that mandate intensive supervision.  The Court should impose no fine.  The Court should recommend that Wooten be designated to Fort Devens or a facility in the Northeast region as close to his family in Brockton as possible.

```
                              JAVON WOOTEN
                              By his attorney,



                              /s/ Timothy Watkins
                              Timothy Watkins
                               B.B.O. #567992
                              Federal Defender Office
                              408 Atlantic Ave., Third Floor
                              Boston, MA  02110
                              (617) 223-8061
```

CERTIFICATE OF SERVICE

I, Timothy G. Watkins, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), as well as to United States Probation Officer Jennifer Sinclair by electronic mail, on November 17, 2006.

```
                              /s/ Timothy G. Watkins
                              Timothy G. Watkins
```